UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| GARY A. TOWER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:05-cv-170-WGH-DFH |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM  DECISION AND ORDER**

**I.  Statement of the Case**

Plaintiff, Gary A. Tower, seeks judicial review of a final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act").  42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f).  The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).[1]

Plaintiff applied for DIB in January 2003 alleging disability since July 18, 2002.  (R. 42-44).  The agency denied plaintiff's application both initially and on reconsideration.  Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on May 24, 2004.  (R. 290-335).  Plaintiff was represented at the hearing by his attorney, Jerrold Zivic.  (R. 290).  Also testifying

---

[1]This matter is before this Magistrate Judge pursuant to the Consents filed by counsel (Docket Nos. 12, 15) and the Order of Reference entered by the Honorable David F. Hamilton, District Judge, on January 13, 2006 (Docket No. 18).

was a vocational expert ("VE"). The ALJ issued a decision on August 13, 2004, finding that plaintiff was not disabled because he retained the residual functional capacity to perform a significant number of jobs in the regional economy. (R. 18-23). Plaintiff filed a request for review with the Appeals Council and the ALJ's decision became the agency's final decision when the Appeals Council denied plaintiff's request for review on August 31, 2005. (R. 5-7). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a complaint on October 5, 2005, seeking judicial review of the ALJ's decision.

## II.  Medical Evidence

### A.   Plaintiff's Right Carpal Tunnel Surgery

On July 17, 2002, plaintiff underwent right carpal tunnel release performed by Dr. William Sligar. (R. 116). In February 2003, Dr. Sligar reported that plaintiff had revealed that his carpal tunnel symptoms persisted following surgery, but a physical examination was normal with no swelling, minimal tenderness, full motion, and good strength. (R. 111). In a May 2003 letter, Dr. Sligar observed that plaintiff had not returned to work since his carpal tunnel release, claiming that he continued to experience right wrist pain. (R. 165). An examination revealed no significant abnormalities, and he was allowed to perform normal activities. Dr. Sligar noted that plaintiff was not eager to return to work. (R. 165).

### B.   Plaintiff's Cervical Spine Surgery

On October 24, 2002, surgery was performed by John R. Dimar II, M.D., on plaintiff's cervical spine to relieve cervical spondylosis from C5 through C7. (R. 101-02). One month after surgery, plaintiff was doing fine with only "a little bit of

pain" in his neck when he over exerted himself. (R. 135). In January 2003, plaintiff's radiculopathy was noted to have improved, and he was described as making slow but steady progress. He demonstrated excellent strength, sensation, and reflexes, and was to be released to work after therapy and final x-rays in three months. (R.107). And, on February 4, 2003, George H. Raque, M.D., indicated that plaintiff was "doing fine from the standpoint of his neck," and opined that plaintiff had recovered from his neck surgery. (R. 272).

**C.    Plaintiff's Lumbar Spine Surgery**

While plaintiff had recovered from his neck surgery, Dr. Raque, in his February 4 examination, did indicate that plaintiff was suffering from lower back problems. (R. 272). A February 2003 MRI revealed degenerative disc disease of plaintiff's lumbar spine with a bulging disc at L5-S1. (R. 273). This condition was surgically corrected on February 20, 2003, by Dr. Raque. (R. 145). On February 26, 2003, Mehmet Akaydin, Jr., M.D., performed a consultative examination, and detected no gross physical, neurological, or orthopedic deficits. (R. 146-50). Dr. Akaydin concluded that, once plaintiff recovered from his lumbar spine surgery, plaintiff would be a good candidate for re-entry into the workforce at work that was less demanding than the work he was doing in the past. (R. 146-50).[2] According to Dr. Akaydin, "at the very least," plaintiff could perform numerous forms of sedentary or "sit down" work. (R. 149). Finally, in a December 2003 letter, Dr. Raque reported that a myelogram performed the previous September showed no evidence of disk

---

[2]At the time plaintiff stopped working, he was performing very heavy drill press work. (R. 296, 327).

-3-

herniation or residual nerve compression, and Dr. Raque opined that no other surgery could help plaintiff. (R. 268).

**D.     Plaintiff's Shoulder Problems and Rotator Cuff Surgery**

In February 2003, Edward E. Bell, M.D., reported that plaintiff had complained of bilateral shoulder pain for years which was getting worse; he described plaintiff as "basically falling apart." (R. 251).[3] Dr. Bell indicated that plaintiff's primary limitation was against using his arms above waist or shoulder level. (R. 251). On May 14, 2003, plaintiff underwent arthroscopic surgery for right rotator cuff repair. (R. 191-96). Plaintiff's shoulder function improved in response to physical therapy, and on June 26, 2003, Dr. Raque's evaluation of plaintiff revealed a full range of motion in plaintiff's right shoulder that was met by plaintiff with some reluctance and reported pain. (R. 248).

**E.     State Agency Review**

State agency physicians reviewed the medical evidence in March and June 2003 and concluded that plaintiff could perform light-level work. (R. 152-59).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296

---

[3] Plaintiff underwent surgery by Dr. Bell to repair his right shoulder (including rotator cuff repair) on one previous occasion on January 13, 1999. (R. 257). After a course of physical therapy, and due to his overall improvement, plaintiff was released back to his past work on April 19, 1999. (R. 252).

(7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV.  Standard for Disability

In order to qualify for disability benefits under the Act, plaintiff must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.*

The burden of proof is on plaintiff during steps one through four, and only after plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

### V. The ALJ's Decision

The ALJ, Lawrence E. Shearer, concluded that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 22). The ALJ continued by finding that, in accordance with 20 C.F.R. § 416.920(b), plaintiff had two impairments that are classified as severe: degenerative disc/degenerative joint disease of the cervical spine and of the lumbar spine. (R. 22). Plaintiff also had two impairments not categorized as severe: status post carpal tunnel repair, and status post rotator cuff repair. (R. 23). The ALJ concluded that none of these impairments met or were substantially similar to any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23). The ALJ concluded that plaintiff retained the residual functional capacity to perform a full range of light work. (R. 23). The ALJ, therefore, determined that plaintiff could perform his past work as an assembly line worker or as an air driver, but not his past work as a drill press operator. (R. 23). The ALJ ended by finding that plaintiff was not under a disability. (R. 23).

### VI. Issues

The court concludes that plaintiff has raised three issues. The issues are as follows:

1. Did the ALJ properly conclude that plaintiff's status post right rotator cuff repair was not a severe impairment?

      2.      Was the ALJ's RFC assessment for light work proper?

      3.      Did the ALJ err in failing to consider a closed period of disability?

**Issue 1:**    **Did the ALJ properly conclude that plaintiff's status post right rotator cuff repair was not a severe impairment?**

Plaintiff's first argument is that the ALJ committed error by failing to conclude that plaintiff's status post right rotator cuff repair was a severe impairment. However, the medical evidence indicates that plaintiff's rotator cuff surgery took place on May 14, 2003, and by June 26, 2003, plaintiff demonstrated a full, albeit painful, range of motion. Under the second step of the evaluation process, an ALJ must examine the severity of an individual's impairments. If the impairment is severe and meets the 12-month duration requirement, then the ALJ will proceed on with the remaining steps. 20 C.F.R. § 404.1520. In this instance, there is no evidence that plaintiff's right rotator cuff injury met the duration requirement. Thus, the ALJ did not err in failing to conclude that plaintiff's rotator cuff repair constituted a severe impairment. Regardless, the ALJ properly evaluated all of plaintiff's impairments, both severe and not severe, in determining at step four that plaintiff retained the residual functional capacity to perform his past work.

**Issue 2:**    **Was the ALJ's RFC assessment for light work proper?**

Plaintiff next argues that the ALJ erred in determining that plaintiff retained the residual functional capacity to perform light work. Plaintiff relies on the opinion of Dr. Bell rendered February 13, 2003, that plaintiff should not return to his previous job and that he should stick to sedentary jobs. (R. 251). However, this opinion was rendered prior to plaintiff's lumbar surgery and his rotator cuff surgery.

And, the ALJ did agree, at least in part with Dr. Bell, as the ALJ concluded that plaintiff could not return to his previous work as a drill press operator because it was too exertional. (R. 23). Plaintiff also directs the court to the opinion of Dr. Akaydin which suggests that plaintiff should limit himself to "at the very least" sedentary work. (R. 149). Again the court concludes that this opinion is not conclusive regarding plaintiff's abilities. A state agency physician reviewed plaintiff's medical evidence, including the opinion of Dr. Akaydin, and on June 23, 2003, concluded that plaintiff retained the residual functional capacity to perform light work. (152-59).

The court also notes that, as the jobs were performed by plaintiff, plaintiff's past work as an assembly line worker and as an air driver operator were both classified as sedentary jobs. (R. 328). There are numerous opinions in the record that suggest that plaintiff retained the residual functional capacity to perform sedentary work. Thus, there is substantial evidence to support a finding that plaintiff could perform his past work in these two areas.

**Issue 3:     Did the ALJ err in failing to consider a closed period of disability?**

Plaintiff's final argument is that the ALJ should have considered a closed period of disability from July 17, 2002, when he had right carpal tunnel surgery until August 2003 when he had recuperated from his rotator cuff surgery. However, Social Security regulations clearly indicate that an individual seeking disability benefits may not engage in tacking in order to demonstrate the existence of a disability. Section 404.1522 explains:

> We cannot combine two or more unrelated severe impairments to meet the 12-month duration test. If you have a severe impairment(s) and then develop another unrelated severe impairment(s) but neither one is expected to last for 12 months, we cannot find you disabled, **even though the two impairments in combination last for more than 12 months**.

20 C.F.R. § 404.1522 (emphasis added).

In plaintiff's case, he alleges that the onset of his disability was July 17, 2002, due to carpal tunnel surgery on his right arm. The medical evidence clearly indicates that plaintiff had recovered from this surgery by at least May 2003. (R. 165). Hence, plaintiff cannot use the period from July 17, 2002, to October 24, 2002, when he underwent surgery for his cervical spine. And, plaintiff, therefore, cannot demonstrate the requisite one-year period of disability. Because plaintiff would have to engage in tacking in order to qualify for a closed period of disability, and because tacking is clearly prohibited, the ALJ did not err when he failed to consider a closed period of disability from July 17, 2002, to August 2003.

## VII.  Conclusion

The ALJ's decision is supported by substantial evidence. The ALJ's decision is, therefore, **AFFIRMED**. Plaintiff's Complaint is **DISMISSED**.

**SO ORDERED.**

**Dated:**  07/27/2006

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Stuart Barasch
sbarasch1@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov